### ELLIS v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Fourth Circuit. July 17, 1908.)

No. 689.

1. RAILROADS—INJURY TO PERSON ON TRACK—STATUTE REQUIRING CROSSING SIGNALS.

Civ. Code S. C. 1902, § 2132, which requires a bell to be rung or whistle sounded on every railroad engine for at least 500 yards before it crosses any highway or street or traveled place, was designed to protect travelers at such crossings, and, as construed by the Supreme Court

of the state, has no application to the case of a person injured or killed on the track at any other place.

**2. SAME—CONTRIBUTORY NEGLIGENCE.**

Plaintiff's decedent, who, after flagging a fast train on defendant's railroad in the darkness, at a point some 140 yards from a station, started to walk down the track to the station ahead of the train, but was struck and killed by the train, which did not stop, *held* chargeable with contributory negligence which precluded a recovery for his death.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, §§ 1293, 1294.]

In Error to the Circuit Court of the United States for the District of South Carolina.

J. P. K. Bryan, for plaintiff in error.

Joseph W. Barnwell (B. L. Abney, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

GOFF, Circuit Judge. This writ of error is prosecuted from a judgment rendered in the Circuit Court of the United States for the District of South Carolina. The suit was instituted by the plaintiff in error against the defendant in error for damages alleged to have been caused by the negligence of the Southern Railway Company, resulting in the death of W. J. Ellis. The plaintiff alleges: That the deceased, who was the husband of L. D. Ellis, his administratrix, went to a regular station of the Southern Railway Company in South Carolina, known as Furman, about 4 o'clock of the morning of March 3, 1902, for the purpose of becoming a passenger on one of the trains operated by that company; that said station is located near where that railroad crosses a public highway; that soon after he reached the station a passenger train then due to arrive appeared in sight, whereupon he—said station being a signal station—gave the usual sign for it to stop, and that those in charge of the train responded by the usual locomotive whistle, indicating that the train would stop, but that they willfully, maliciously, wantonly, carelessly, and negligently ran the train by the station without first for 500 yards before reaching the public highway and station ringing the bell or sounding the whistle on the locomotive; that the train went by said station at an exceedingly high rate of speed, and willfully, maliciously, wantonly, carelessly, and negligently struck the person of said W. J. Ellis with some part of the locomotive, whereby he was instantly killed; that he left, surviving him, a wife and seven minor children, for whose benefit the suit was instituted and prosecuted. The answer of the defendant denied the allegations of the plaintiff, and alleged that the injury which caused the death of W. J. Ellis would not have occurred but for his negligence and his want of care in placing himself upon the track of the defendant's railway when its train was then due and approaching, and in remaining on said track where he could be struck, which said negligence contributed to his injury as the proximate cause thereof. The case came on regularly to be heard before the court and a jury, when, at the close of the testimony offered by the plaintiff below, the court,

on motion of the defedant below, directed a verdict in its favor. The writ of error now under consideration was then sued out.

The testimony shows: That W. J. Ellis, intending to go from Furman, in South Carolina, to a point in Florida, desired to take passage on the fast train of the defendant from the north, which did not regularly stop at that station, but that under the rule of the company should stop there when duly flagged. That he drove in a buggy accompanied by two of his friends, about the hour of the morning mentioned in the complaint, to the public road where it crossed the railroad track about 140 yards to the north of Furman station. That they had started from said crossing going toward the station when the train was observed to be approaching, at which time he said to one of those with him, "jump down and go across and wave the train," when the party so requested—this party being a witness at the trial—jumped from the buggy, crossed to the sidetrack, and struck some matches which were applied to a roll of paper in the hands of the decedent, who by this time had joined him. That the blazing paper was waved over the track. That two whistles were sounded from the locomotive. That the decedent said: "Let's go to the station. They are going to stop for us." That the two then started down the track towards the station, Ellis, following behind the party so subsequently examined as a witness, saying to him three different times: "Get off the track." That the party so spoken to got off the track and walked the space between the main and the side track, which was from six to eight feet wide, and that he, alarmed, and not knowing which was the main track, sat down on the ground and was not injured. That the train did not stop, but passed by at a high rate of speed, striking the decedent, who was on the main track, and killing him instantly. That the point at which the body of Ellis was found was somewhere between 20 and 40 feet of the station, and near the point where persons desiring to enter the cars usually did so after the train had been flagged. That the watch, some silver coin, and other effects of the deceased were found still north of that point, and nearer the highway crossing.

The facts relating to this deplorable accident are few, and there is really but little controversy concerning them. As we see the case there are but few questions of law applicable to the facts presented by the record, though counsel for plaintiff in error has, with great research and ability, presented for our consideration questions which he insists are fairly raised by the evidence, but which we are constrained to say we find not to be pertinent.

In addition to the principles of the law generally applicable to cases of this character, the plaintiff in error relies upon a statute of the state of South Carolina which reads as follows:

"A bell of at least thirty pounds weight and a steam whistle shall be placed on each locomotive engine, and such bell shall be rung, or such whistle sounded, by the engineer or fireman, at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place, and be kept ringing or whistling until the engine has crossed such highway or street or traveled place." Civ. Code S. C. 1902, vol. 1, p. 820, § 2132.

While it is true that this statute, construed in connection with other provisions of the South Carolina Code applicable thereto, has been held by the courts of the state as indicating that the injury of a person by collision with trains at a "public highway or street or other traveled place" is prima facie evidence of negligence on the part of the railroad company, nevertheless, as the undisputed testimony here shows that the deceased met his death not on a public highway or street or traveled place, nor at a station, but on the main track of the Southern Railway Company, some distance from a public highway or traveled place, we must hold from the facts here disclosed that said statute has no bearing on this case.

The Supreme Court of South Carolina, in Neely v. Railroad Co., 33 S. C. 139, 11 S. E. 636, said:

"Section 1483, Gen. St. 1882 (now section 2132, Civ. Code 1902), requires railroad corporations to ring a bell or sound a steam whistle at the distance of at least 500 yards from the place where the railroad crosses any public highway or street, or traveled place, to be kept ringing or whistling until the engine has crossed such highway or street, or traveled place, in the neglect of which, by section 1529, supra (now 2139), the corporation is made liable for any injury resulting from a collision at such crossing, unless it is shown that in addition to a mere want of ordinary care the person injured, etc., was at the time of the collision guilty of gross and willful negligence, etc. Now, there can be no doubt but that the object of these sections was to prevent collisions which might occur between persons attempting to cross the track of the railroad and the locomotive and cars approaching the crossing at the same moment, and the provisions of the act did not include, nor was the act intended to include, injuries inflicted upon bystanders not intending to cross, or upon cattle that happened to be killed or injured pasturing nearby, but not upon the crossing or using it to pass from the one side to the other."

Deceased was, at the time he was killed, on the main track going toward the station, with his back to the approaching locomotive. He was anxious to stop the train. He was evidently late in reaching the vicinity of the station, was surprised when he reached the crossing, several hundred feet from the station, to see the train rapidly approaching, was in a hurry, greatly excited, considerably confused, evidently in doubt as to which was the main track, and very anxious to signal and stop the train so that he might proceed upon his journey. He was solicitous for the safety of his companion, whom he continually cautioned, and he seemed to be unmindful of himself, although he was in great danger. It is evident that he misconceived the situation, and that his judgment was at fault. He was under the impression that the signal had been observed, and that the train would stop, and he must have thought that he was on the sidetrack, for he knew that the train would have to pass the point where he was in order to reach the station, which was still some distance before him. Had he observed the caution that his companion did, a warning that he himself suggested, he would not have been injured.

It may be admitted that the train did not give the proper signals for either the crossing of the county road, or for the station, and still the deceased, who necessarily knew that the train was very near him, who had heard and seen and aided in the effort to flag it; who cautioned another to keep out of its way, was not absolved from the rule

which required at least ordinary care, prudence, and caution on his part, which, instead of observing, he entirely ignored, and by his conduct contributed to a degree seldom equaled to the lamentable accident in which he was so fearfully involved. Why he followed the main track, instead of using the sidetrack, or the space between the tracks, or the road that led from the crossing to the station, we may surmise concerning, but will never know. At that time he should have made vigilant use of his senses, and should have exercised the care required to avoid the danger that was not only possible but was then imminent.

We conclude that the court below was right in reaching the conclusion that there was "no legal ground upon which any verdict in favor of this plaintiff can be sustained," and we further find that said court was justified by the testimony before it, in saying:

"This unfortunate deceased, from all the testimony a very reputable and good man, husband, and father, came to his death by accident the result of his own carelessness."

As we are forced to the conclusion that under the law no recovery can be had in favor of the plaintiff in error, upon any view which can be properly taken of the facts the evidence tends to establish, it follows that there is no error in the judgment complained of.

Affirmed.